INTERNATIONAL LIGHT AND POWER COMPANY V.
LOUIS MAXWELL ET AL.

Decided November 13, 1901.

**1.—Action for Death—Negligence of Agent or Servant.**

While under the first section of article 3017, Revised Statutes, common car-- riers are made liable not only for their own negligence causing the death of a. person, but also for the unfitness and negligence of their servants, the liability of others than carriers attaches, under the terms of the second section of the article, only for the negligence of the principal, and not for that of the agent. or servant.

**2.—Same—Independent Contractor—Electric Plant.**

The owner of an electric light plant which is unfinished and still in charge of an independent contractor engaged to construct it, is not liable for the death of a person caused by the faulty construction of the plant allowing an exposed wire to become charged with electricity.

**3.—Same—Owner Held in Possession and Control.**

Where a contract for the construction of an electric light plant provided that the contractor should keep a competent man in charge of the dynamos "for thirty days after they go into the regular service, to make the necessary ad- justments and instruct the purchaser's attendants in their future management and care," and during such thirty days the plant was in actual operation and. the owner (purchaser) collecting for the lights furnished, the possession of the plant did not remain in the contractor so as to exempt the owner from liability for negligence in its construction causing the death of a person.

**4.—Practice—Immaterial Error—Evidence.**

The exclusion of testimony to prove a fact which is abundantly established. by other evidence in the case is not reversible error.

**5.—Same—Assignment of Error.**

A proposition under an assignment of error, complaining of the charge be-- cause it eliminates the question of contributory negligence, will not be consid- ered where such proposition is not found in the assignment.

**6.—Negligence—Electricity—Degree of Care—Charge.**

A charge to the effect that it is the duty of persons operating an electric plant in a city to use ordinary care so to place and maintain the same in refer- ence to other objects conducting electricity as to avoid the escape of electricity from their wires to such conductors in such quantities as might injure a person passing along or standing upon the street and sidewalk, was not objectionable as requiring a higher degree of care than is required by law because eliminating- the question as to whether such results, or injury, could reasonably have been anticipated from the way in which the plant was constructed.

**7.—Action for Death—Measure of Damages—Parents and Son.**

Where plaintiff sued for damages in negligently causing the death of their son, a charge that a finding in their favor should be in such sum as the jury might believe from the evidence plaintiff had a reasonable expectation of receiv- ing from the son, had he not been killed, was erroneous,—the true measure of damages being compensation for the loss sustained by plaintiffs by the death of the son, and the question as to what sum now allowed would give such compen- sation being a matter for the determination of the jury under all the circum- stances of the case. Following Railway v. Morrison, 93 Texas, 527; Traction Co. v. White, 61 S. W. Rep., 706.

**8.—Contribution as Between Wrongdoers.**

Where the tort for which a judgment of damages was rendered against de- fendant consisted in defendant's use of a defective appliance in its electric light. plant, as furnished it by the constructor of the plant, its wrong in using such appliance being an active wrong, it can not exact contribution from the con- structor, but its right against him, if any, rests upon a breach of contract.

Appeal from El Paso. Tried below before Hon. J. M. Goggin.

*Clark, Fall, Hawkins & Franklin,* for appellant.

*Patterson & Wallace,* for appellees Maxwell.

FLY, ASSOCIATE JUSTICE.—Louis Maxwell and his wife, Harriet Maxwell, instituted this suit to recover of appellant, the El Paso Gas, Electric Light and Power Company, and Wehner & White damages arising from the death of their son, James H. Maxwell, which it was alleged was caused through the negligence of the defendants. Appellant pleaded contributory negligence on the part of the deceased in placing his hand on a spool or reel attached to a post near the sidewalk; that at the time of the death of said James H. Maxwell the plant of appellant was in process of construction by the El Paso Mine, Mill and Smelter Supply House, or one of its subcontractors, who, as to appellant, was an independent contractor, and said plant had not at that time been turned over to appellant, but was under the exclusive control of said independent contractor. Appellant further answered that if the death of James H. Maxwell was caused by the negligence of anyone other than himself, it was through the negligence of its codefendants in improperly placing the post and suspending a cable from which their arc lamp was suspended, and in the event of judgment against it, it prayed for judgment over against its codefendants. The other defendants pleaded contributory negligence on the part of deceased, and further, that if he lost his life through the negligence of anyone, other than himself, it was through the negligence of the International Light and Power Company. The court instructed the jury to return a verdict for the El Paso Electric Light and Power Company and Wehner & White, and the jury returned a verdict responsive to such direction, and against appellant for the sum of $2500.

The facts tended to establish that deceased was killed by electricity transmitted by a cable, to which an arc lamp was suspended, to the reel or spool on the side of a post, or to the post itself which was wet from a recent rain. The electricity was communicated to the cable by a wire belonging to appellant which had been in such proximity to the cable as to charge it with electricity. The cable was suspended across the street when the wire belonging to appellant was placed in proximity to it.

Suits for damages arising from the death of any person are based solely upon statutory provision, and must be tested, applied, and executed under and by virtue of such statutory enactments. The first section of article 3017, Revised Statutes, provides for the recovery of damages arising from the death of a person, from any proprietor, owner, charterer, or hirer of any railroad, steamboat, stagecoach, or other vehicle for the conveyance of goods or passengers on account of their negligence or carelessness, or the unfitness, negligence, or carelessness

of their servants or agents. The second section of the same act permits and authorizes the recovery of damages "when the death of any person is caused by the wrongful act, negligence, unskillfulness, or default of another." In the first section the common carrier of every description is made liable not only for its own negligence, but also for the unfitness and negligence of its servants; in the second, liability attaches for the negligence of the principal, and not for that of the agent or servant.

In the case now before the court the evidence clearly indicated that the electric plant was constructed for appellant by an independent contractor, and even if. the statute were to authorize the recovery of damages in such cases against a private corporation of the class to which appellant belongs for the wrongs and omissions of its servants, appellant could not be held liable unless it had accepted the work of the contractors and thereby ratified any negligence in the construction of which the contractors were guilty, or had in some way connected itself with the negligence of the contractors. The contract between appellant and the construction company was for the accomplishment of a lawful purpose, made so by the ordinance of the city of El Paso, and by the terms of the contract it was specially provided that the contractors should in constructing the plant comply with all laws and ordinances as well as the rules of the national board of underwriters. Such being the nature of the contract, appellant could not be held liable for the negligence of the contractors. Cooley on Torts, pp. 643-648; Devlin v. Smith, 89 N. Y., 507; Hexamer v. Webb, 101 N. Y., 377.

The foregoing principles of law being kept in view, it would follow that as long as the plant was unfinished and in the hands of the contractors they alone would be responsible for damages arising from its faulty construction, and appellant could not be held liable. This was the basis upon which the trial proceeded, and it is the contention of appellant that at the time of the death of James H. Maxwell, the plant had not been placed in their possession. In support of this contention it is stated that, although the machinery was in actual operation and lights were being furnished to the city as well as private parties, still appellant was not in possession of the plant, but that, under a provision of the contract after completion of the plant, and before its acceptance, the contractor should for thirty days run it to test its efficiency.

Had there been any such provision in the contract, a different phase of the case might have been presented, but the clause of the contract cited by appellant does not support its contention. It is as follows: "In addition to furnishing a competent superintendent, labor, tools, etc., for the erection, adjustment, and starting of the dynamos, the contractor will keep a competent man in charge of the same for thirty days after they go into regular service, to make the necessary adjustments and instruct the purchaser's attendants in their future management and care." It is clear that the latter part of this clause has no reference to anything connected with the construction, but refers to the employment of a superintendent to have charge of appellant's servants for thirty

days to instruct them in their duties. The instruction provided for was not neccessarily to be given before appellant had accepted the plant and while its efficiency was being tested, but after the dynamo had gone "into regular service," which service could not have been that of the contractor, but must necessarily have been that of the owner of the plant. During the thirty days referred to in the contract, appellant's servants, or "attendants," as they are denominated, must have been in charge of the machinery, and the proof, as before indicated, showed that appellant was collecting the revenue arising from contracts with its patrons. If the only connection the contractors had with the plant was through the expert who was to give the servants of appellant instruction, or if they were merely running the plant for appellant, then appellant was in possession of the plant and was responsible in damages for its neglect in using defectively constructed wires. It follows that it was not error to refuse the special charge requested by appellant, which was in effect an instruction to find for appellant.

The first assignment of error complains of the exclusion of evidence to the effect that the contractors had sublet the contract, which was designed to furnish evidence of the independent character of the original contractors. That fact was abundantly established, and the desired testimony would not have lent any additional force to the proof.

It was alleged in the petition that the cable across the street to which the arc lamp was suspended was above the wire of appellant that charged the cable with electricity, which testimony was permitted, over appellant's objection, which tended to show that appellant's wire was above the cable. While we think the objection untenable, the question may be eliminated by an amendment of the petition, and need not be further discussed.

There is no merit in the fourth assignment of error. The charge correctly stated that appellant had pleaded "that if the death of said James H. Maxwell was caused by the negligent construction of said plant, it was the negligence of said supply house, and not of said defendants." That was one of the defenses urged by appellant in the lower court, and is the main one contended for on appeal. The theory that the construction company was responsible for the negligence, if any, was not only alleged in the answer, but was embodied in a special charge requested by appellant. There was nothing in the charge to mislead the jury.

The court charged the jury "that it is the duty of persons, in the erection, maintenance, and operation of electric light primary wires upon the streets of a city for the transmission of electric currents, to use ordinary care so to place and maintain the same in reference to other objects conducting electricity, as to avoid the escape of electricity from their wires to such conductors in such quantities as might injure persons passing along such streets or sidewalks, who, while standing on such streets or sidewalks, may come in contact with conductors." The charge is objected to in the assignment of error as imposing a higher

degree of care than is required by law, because it eliminates the question as to whether appellant might have reasonably anticipated the results of the construction of its plant in the way in which it was constructed. Proof of the fact that a wire heavily charged with electricity was placed so near another wire which ran down near the sidewalk where people were constantly passing as to fill it with electricity, charged the party erecting the wire with the knowledge that persons were liable to be injured or killed by coming in contact with such wire. Dealing with so dangerous an agency as electricity, it was clearly the duty of appellant to construct its wires so as to prevent them conducting the electricity in such proximity to a sidewalk that people might be brought in contact with it, and if it is done, and some one is killed, it is chargeable with the knowledge that such result was likely to follow. The court did not assume that the placing of the wires in the position they occupied was negligence, but that matter was left to the jury to find from the evidence. There is another proposition under the assignment that complains of the charge because it eliminates the question of contributory negligence. The objection is not tenable, but if it were, is not found in the assignment of error, and could not be considered by this court. Bender v. Peyton, 4 Texas Civ. App., 57; Sickles v. Railway, 13 Texas Civ. App., 434.

There is no error in the charge complained of in the seventh assignment. The negligence charged against appellant was not connected with the manner in which its servants or agents were operating the plant, but grew out of the defective construction of a certain specified part of the plant. It did not matter whether the plant was being operated by the contractors or the servants of appellant; the question was, for whose benefit was the plant being operated? If the theory of appellant be the correct one, it could never be held responsible for any defects in the construction, because it is necessarily compelled to operate the plant through the medium of agents, servants, or employes. There is nothing in the language of the contract that indicates that the plant was to be tested for thirty days; on the other hand, the provision as to the last payment being made after tests to be made within thirty days, points to the conclusion that there was no test of thirty days required, but that a test of some sort should be made within thirty days after completion of the plant.

The ninth assignment of error complains of the sixth paragraph of the charge, which is to the effect that if certain enumerated facts are found to be true, the jury would "find for plaintiffs in such an amount as is equal to the damage they have suffered by reason of their said son's death, if any they suffered." In a succeeding paragraph the jury was instructed: "Should you find for the plaintiffs and allow them damages, you will find for them such sum of money as you may believe from the evidence they would have had a reasonable expectation during their lives of receiving from their said son, James H. Maxwell, had he not been killed, if he was killed, by the alleged shock." Under the de-

cisions in the case of Traction Company v. White, 81 Southwestern Reporter, 706, and Railway v. Morrison, 93 Texas, 527, the instructions were erroneous. In the White case it is said: "The instruction was erroneous in that it required the jury, in effect, to allow the amount of the pecuniary contributions which they might find the deceased, had he lived, would have made to his mother after becoming of age. The true measure of damages is compensation for the loss sustained by plaintiff from the death of her son, and what sum allowed now will give such compensation is a question for the jury under all the circumstances of the case." The charge in this case is open to the criticism urged against those in the two cases above cited. Charges similar to the one given by the trial court have been commended by this court and the Supreme Court, although the precise objections urged in this case were not made in those cases.

It is a general rule as to torts that there can be no contribution and indemnity as between wrongdoers. As in the case of most rules, there are some exceptions to this rule, as when the servant of a railway company is guilty of carelessness, and injury results therefrom, both master and servant are liable for damages, but the servant alone, being the actual wrongdoer, would be held to indemnify the company for any loss resulting from such wrong. Appellant, however, does not bring itself within the exception, for its tort consists in the use of a defective appliance furnished by another. It was actively wrong in using such appliance, and can not exact contribution from the constructors of the defective appliance. In this case its compensation for damages must rest on the breach of a contract, and under proper allegations, it might place itself in a position to be reimbursed for such damages as may have arisen from such defective construction. Under the pleadings in the case it may have been proper to instruct a verdict as the contractors, at least so far as the appellant was concerned, but as it becomes necessary to reverse the judgment against appellant, the whole case will be sent back for another trial. Matters not noticed will probably not arise on another trial.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*