**EAST TEXAS PUBLIC SERVICE CO. v. JOHNSON et al. (No. 3437.)\***

Court of Civil Appeals of Texas. Texarkana. Nov. 16, 1927.

Rehearing Denied Dec. 8, 1927.

**1. Electricity ⬳19(8)—In action for injury from hook on pole charged from contact with broken wire, negligence of electric company held for jury.**

In action against electric company for injury by electric shock when plaintiff touched hook on pole used to fasten cable which was used to raise or lower street light, evidence *held* to take to jury question of actionable negligence on part of defendant, though hook had become charged as result of cutting of guy-wire ·by telephone company.

**2. Electricity ⬳14(1)—Electric company's authority to keep wires and connections on public street is on implied condition to use due care to avoid ·injury to those lawfully on street.**

Where electric company is accorded by town authorities privilege of stringing and keeping wires and connections on public street, there is implied condition that it should use due care and precaution to avoid injury to every one lawfully in proximity to such wires or connections and likely to come, accidentally or otherwise, in contact with them.

**3. Electricity ⬳19(12)—Pedestrian injured by touching charged hook on electric pole while standing on sidewalk held not, as matter of law, contributorily negligent.**

One who while talking over business matter on public sidewalk touched charged hook six feet from ground on electric pole and was injured *held* not, as matter of law, guilty of contributory negligence, since such act was not so uncommon as to be unlikely of occurrence.

**4. Electricity ⬳19(10)—In action for injury from charged hook on electric company's pole, defendant's knowledge of dangerous condition held for jury.**

In action against electric company for injury by electric shock when plaintiff touched hook on pole used to fasten cable which was used to raise or lower street light, evidence *held* to take to jury question whether defendant had notice of existence of dangerous condition.

**5. Electricity ⬳19(5)—Jury may infer actual notice of dangerous condition of wires by electric company from, slight circumstances.**

In determining whether electric company knew or should have known of dangerous condition of wires, it is general rule that jury will be warranted in inferring actual notice from slight circumstances.

**6. Trial ⬳350(6)—Issue of electric company's negligence in failing to, insulate wire suspending street light held justified, under allegations of negligence in failing to equip wire upholding street light with "strain insulators."**

In action against electric company for injury by electric shock when plaintiff touched hook on pole used to fasten cable which was used to raise or lower street light, allegations of negligence in failing to properly insulate hand chain and in not equipping wires upholding street light with "strain insulators" *held* to justify submission of issue whether there was negligence on part of electric company in failing to insulate wires supporting and suspending street light.

**7. Trial ⬳352(1)—In action for injury from charged hook on electric pole, issues relative to electric company's knowledge of dangerous condition and failure to insulate held to present applicable law.**

In action for injury from charged hook on electric company's pole, issues as to whether electric company knew or should have known of dangerous condition of wires and whether it was negligent in failing to insulate *held* to present law applicable to circumstances of case, entitling plaintiff, if answers were favorable, to recover damages.

**8. Appeal and error ⬳1062(1)—Error in form of issue held not prejudicial, where judgment can be supported on other findings.**

In personal injury action, that form of one issue was erroneous is not prejudicial, where judgment can be supported on other findings entirely severable from such issue.

**9. Electricity ⬳16(7)—In action for injury from charged hook on electric company's pole, telephone company held not liable for antecedent negligence in cutting guy-wire.**

In action for injury from charged hook on electric company's pole, telephone company which cut guy-wire attached to its pole some time before *held*, as matter of law, not liable for injury, though cutting of guy-wire caused hook to be charged, since negligence of telephone company was antecedent and remote.

**10. Contribution ⬳5—There can be no contribution between parties where active negligence of both was proximate cause of injury.**

There can be no contribution between parties, in personal injury action, in case active negligence of both was immediate and responsible or proximate cause of injury.

Appeal from District Court, Cass County; Hugh Carney, Judge.

Action by R. E. Johnson against the East Texas Public Service Company, in which defendant, by way of a cross-action in the nature of reimbursement, impleaded the Southwestern Bell Telephone Company. Judgment for plaintiff and for the Telephone Company, and defendant appeals. Affirmed.

The appellee R. E. Johnson was shocked and harmed by the electric light wire of appellant under the circumstances hereinafter stated, and sues for the damages resulting to him. The petition alleged that the plaintiff was shocked and injured on account of the negligence of the appellant in the following particulars: (1) In the placing of and maintaining the hand chain used to raise

---

and lower the street light which was suspended from a cable extending between electric light poles on the pole adjacent to the public sidewalk to the point near the ground where the public could touch or come in contact with it, without properly and safely insulating the same against the high voltage of electricity conveyed in service to the street light. (2) In having and maintaining, under the special circumstances, the wires upholding the street light without being equipped with "strain insulators," the usual and proper approved contrivance used for safety against high tension wires, permitting the chain attached for the lowering and raising of such street light to become and remain dangerously charged with electricity, to the menace of the public safety or any one touching it.

The appellant answered by general denial, and especially pleaded that its wires and appurtenances at the point of alleged injury were properly constructed, maintained, and operated, and the plaintiff was guilty of contributory negligence in the act causing him to be shocked of placing his hand upon the chain or cable for lowering the street light, he not being an employee or having any duty to perform that called for him to touch the chain or cable located and fastened seven feet above the ground. The appellant further, by way of cross-action in the nature of reimbursement, impleaded the appellee the Southwestern Bell Telephone Company. Such pleading was to the effect that the appellee R. E. Johnson was suing it for damages for being shocked by electricity because of alleged "negligence upon its part" which was "only passive;" that, in fact, "the negligence of the telephone company," which was set out, "was the direct and proximate cause and sole cause of the plaintiff's injury, if any, and had it not been for the said act of negligence on the part of the telephone company the plaintiff would never have been injured." The prayer was that:

"If any judgment is rendered against it [in favor of plaintiff], that it have judgment over and against the Southwestern Bell Telephone Company for the amount of the judgment so rendered against it. Further, if the court refuses to grant the foregoing prayer, and in the case the plaintiff recovers against it, that it have judgment over and against the Southwestern Bell Telephone Company for one-half of the judgment so rendered against it."

The alleged "negligence of the telephone company" was to the effect that the Southwestern Bell Telephone Company had, without any knowledge on the part of the appellant, cut and removed one end of a guy-wire attached to the pole of the telephone company and the electric light pole of the appellant, permitting same to swing loose from the electric light pole, and failed to secure the same so that it would not swing down

loose and become entangled, as it did, with the highly charged electric wires of appellant, thereby transmitting, by the contact, the electric current to the hand chain which the plaintiff's hand came in touch with, causing his injury; that the telephone company had long consented to the placing of the guy-wire on its pole, and never notified appellant of its purpose to cut and remove the end of the guy-wire attached to the pole; that appellant had no knowledge, in time to avoid the injury to appellee, of the fact that the guy-wire had been cut. The telephone company answered by a general denial, and also filed a motion to sever, for reasons set forth. The motion to sever was overruled.

After hearing the evidence the court, on the cross-action, directed a verdict in favor of the telephone company against the appellant, and on the case as between appellee Johnson and appellant submitted special issues to the jury. The following special issues were submitted and answered by the jury, viz.:

"Q. 1. Did the East Texas Public Service Company have such knowledge of the dangerous condition of the wires, connections, and appliances at the place of the accident as would have put a reasonably prudent person on notice that, in the exercise of all due care to protect the public, it was necessary to remedy such dangerous condition?" Answer of jury: "Yes."

"Q. 2. Do you believe from a preponderance of the evidence that the failure of the defendant East Texas Public Service Company to have the wire supporting the suspended light at the intersection of Hiram and Williams street insulated with a proper contrivance [johnnie-balls] was negligence on the part of the East Texas Public Service Company at the time the plaintiff is alleged to have been injured?" Answer of jury: "Yes."

"Q. 3. Do you believe from a preponderance of the evidence that the maintenance by the defendant East Texas Public Service Company of the high tension wire on its pole near the corner of Mayes' store bare of insulation was negligence on the part of the East Texas Public Service Company at the time the plaintiff is alleged to have been injured?" Answer of jury: "Yes."

The jury further answered that "the negligence" in the above respects was a proximate cause of the injury; that the plaintiff was not guilty of contributory negligence; and that the plaintiff suffered damages in the amount named.

At the noon hour on February 25, 1926, the appellee, a brickmason, 42 years old, was standing on Hiram street, in the town of Atlanta, talking over a business matter with Mr. Nunn. While standing there the appellee in a casual manner placed his hand on the stirrup or metal hook, six feet and two inches above the ground, fastened to the electric light pole. The stirrup or hook is used to securely fasten a cable, which at the time was there, extending up the pole to a suspended

street light to lower and raise such street light as occasion might require. Immediately upon resting his hand on the stirrup he dropped to the ground insensible, shocked by electricity and grievously harmed, as the jury determined. He did not know and could not see that the metal hook was charged with electricity. The amount of damages awarded by the jury is warranted, and such finding is here adopted. The street and corner where the appellee was standing and the pole was located was a public place where many people passed and were accustomed to resort for business and pleasure.

The appellant owns and operates an electric light plant in Atlanta. In the business part of the town, besides other lights, the appellant maintained street lights. At the intersection of Hiram and Williams streets a street light was placed some long period of time before February 25, and has been continuously maintained. The street light hung suspended from a cable and with connection with a service wire. The cable was a flat twisted steel cable extending diagonally across the street, and between 25 and 30 feet above the ground. An electric light pole was located on Williams street at the corner near the storehouse of Mr. S. C. Mayes. Near, but several feet below, the top of the pole was a cross-arm, to which were attached three heavily charged electric service wires. Two of the wires carried 2,300 volts of electricity, a sufficient amount "to kill you." The other wire served the street lights. Diagonally across the street, at the corner of Hiram street and near the storehouse of Roy Price, was a pole owned and placed there by the appellant. The cable from which the street light was suspended was securely fastened to the top part of the two poles, and several feet above the cross-arm on the opposite pole. On the pole at the corner of Hiram street was placed and fastened the stirrup or hook, to secure the cable used in lowering and raising the street light. This cable or hand chain was attached to the light and extended to the pole through a loop and on down the pole to the fastening of the stirrup, or hook, on the pole. These recited facts all appear undisputed except the extent of injuries sustained by appellee.

The evidence further showed without dispute that the chain for raising and lowering the street light, as well as the cable between the two poles upholding the street light, was not "insulated" by the interposition of a nonconductor of electricity. They did not, of themselves, carry any electricity, and were securely placed above all wires that carried electricity. However, the primary wire carrying electricity was connected with the street light. And as to the "wires" the appellant's witness Hewitt testified:

"I don't know whether our wires [service] were insulated good [with devices] there or not;

300 S.W.—62

the majority of them [insulating devices] were off."

As proved, if "johnnie-balls," which "break the current," had been placed in the suspension wires of the street light, as could easily have been done, "Mr. Johnson's injury would not have occurred." Such insulator was not there, although the appellant had such insulators in use. A "johnnie-ball," as described, is a small piece of porcelain with two holes in it through which wires go and are kept from coming in contact with each other. The porcelain is a nonconductor. The insulator costs "75 cents each." Its purpose is to "break the current." "With such construction," as stated, "no one would be in danger in coming in contact with this metal thing [hand chain] hanging down here [at the pole]."

It was further shown without dispute that at the time of the injury a guy-wire attached to the top of the pole on which the service wires were located on Williams street had become entangled with the highly charged service wires located immediately below, and thereby, by the contact with the cable upholding the street light, conveyed electricity to it and the hand chain used to raise and lower the street light. As described:

"The guy-wire had been cut at one end and was hanging down from the pole, and the wind blowing it back and forth had rubbed off the insulation [of the service wires]."

It was proved by the appellant that about fourteen feet south of its electric pole on Williams street was located a pole about thirty feet high, owned entirely by the telephone company. At the top of the electric light pole and above the cross-arm a twisted iron or steel guy wire was fastened and then extended over and guyed to the top of the telephone pole. The guy-wire belonged exclusively to appellant, and was so placed and used to keep its pole steady. For some years before the injury the appellant, with the knowledge and acquiescence of the telephone company, had used the telephone pole to attach the guy-wire to. Prior to the injury the guy-wire had been cut from the telephone pole and left hanging down loose from the electric light pole. It was ten feet or more in length. The appellant, as claimed by it, had no information of the cutting of the wire until after the injury in suit. It was urged by appellant that the injury would in no wise have happened but for the cutting of the wire and leaving it loose without notice to it. The reasonable inference from the evidence, considered as a whole, is that in making necessary improvements and replacements the employees of the telephone company cut the guy-wire on its pole. The time when the guy-wire was cut is variously estimated by the witnesses.

The witness Ritchie testified:

"I do not know who cut the guy-wires. All I know was that I simply saw what appeared to have been a guy-wire that caused the electricity connection. The guy-wire did not charge any electricity, but it had to be charged from that [service wires] before it could cross over [to the hand chain]. That was an insulated wire [service wire] it [the guy-wire] worked on, and it [the service wire] had apparently worn off. It [the hanging guy-wire] would have to be there a long time in order to do that, I should think—maybe several months; but it might have been done in a month—I don't know. * * * If it were new insulation it would take quite a while to wear off, but if it were old insulation it would soon wear off."

The witness Caldwell testified:

"I am familiar with the telephone company property at Atlanta. I am general construction foreman. I was there on January 8, 1926, and went over the plant, seeing about replacements. We decided to change the pole at corner of Williams street. On January 8, 1926, there was no guy-wire from that pole to the electric light pole. The pole was removed after the 8th and about from the 12th to 15th of January, 1926."

The witness Hewitt, appellant's manager, testified:

"That pole had been removed at the time of the accident, just a short time before that, when they [telephone company] renewed the line on Williams street—in fact, they rebuilt the whole town. They stayed there and worked two or three months, and had been gone about two weeks, or maybe a month, at the time of the accident. * * * The first time I knew of the entangled wire was when Mr. Johnson was shocked. The telephone company did not notify me that it was going to cut the guy-wire or move the pole at that corner. * * * I do not have any idea how long it had been cut. It had not been down two or three months, because the wire showed a fresh plier cut; it was still shiny, but, of course, I could not tell just how fresh; it could have been done a month or two."

Prendergast & Prendergast, of Marshall, and J. A. R. Moseley, Jr., of Texarkana, for appellant.

King, Mahaffey & Wheeler, of Texarkana, Phillips, Townsend & Phillips, of Dallas, and O'Neal & Harper, of Atlanta, for appellees.

LEVY, J. (after stating the facts as above). The court refused appellant's requested peremptory instruction, and submitted the case to the jury on special issues. The appellant's objections thereto in pertinent propositions are, in effect, that (1) actionable negligence was not shown in the circumstances of the case; (2) the plaintiff was guilty of contributory negligence, as a matter of pure law; (3) special issues Nos. 1, 2, and 3 were each erroneous upon the special grounds enumerated. Issues Nos. 1, 2, and 3, in effect and substance, are as follows:

(1) Whether or not the electric company by the exercise of ordinary care might have found out and known of the dangerous condition of the wires, connections, and appliances at the place of injury, and the need of caution against injury to the public on account of such dangerous condition.

(2) Was it a negligent act on the part of the electric company, in the circumstances proved, to fail to insulate "the wire supporting the suspended street light" with the usual nonconductor of electricity to prevent hurtful discharge of the current of electricity through the pulley wire used in lowering and raising the street light?

(3) Was it a negligent act on the part of the electric company, in the circumstances proved, to maintain its service wires at place of injury "bare of insulation?"

[1] An examination of the first point above may be commenced with the brief consideration of the facts established by the evidence. The appellant's service wires at the point of injury were placed about twenty-five feet above the public street of the town. The extension cable or span wire upholding the street light was placed near the top of the two poles, several feet above the service wires. A service wire was connected with the street light. The pulley wire, used to raise and lower the street light, ran from the top of the street light, then passed through a pulley on the pole adjacent to the public sidewalk of the town, thence down the sidewalk side of the pole to a reel which fastened to a metal hook located six feet and two inches above the sidewalk. The pole to which the reel and pulley were attached was immediately next to the sidewalk or pavement. It was undisputed that the extension or span wire and the pulley wire were not insulated at all, and that the placing of "johnnie-balls," commonly used to "break the current" on the wires supporting the street light, would have prevented harmful consequences to a person touching the pulley wire or its fastening. In the light of the evidence there were but two ways by which the heavy current of electricity could be communicated to the pulley wire—either by receiving it directly from the street light, or by coming in contact in some way with a live or "exposed" service wire. In such case, a deadly current may pass through the pulley wire. It is undisputed that a guy-wire of appellant's was swinging loose and downward from the top of the pole which held the service wires, "and the wind blowing it back and forth had rubbed off the insulation [of the service wires]." There is evidence authorizing the inference that the guy-wire had been down and wearing against the service wire for some two weeks, and probably "one or two months." As a consequence, as admittedly shown, the pulley wire became charged with a deadly current of electricity. The

jury were authorized to find, as they did, that the appellant knowingly permitted that condition to exist and failed to remedy it.

The appellee, lawfully standing on the sidewalk, in a casual way placed his hand on the hook of the pulley wire and was shocked. He was not required to take hold of the hook. He placed his hand on the hook without knowing of the danger of so doing, as there was nothing in its appearance to give him warning of the presence of the deadly current with which it was charged. It may be regarded as a proved fact that appellant's wires and appliances may, in the first instance, have been so placed and maintained as not to endanger persons on the sidewalk, although they might have touched the metal hook on the pole. But if after the appellant placed its wires and connections new facts or conditions arose, making, in view of them, its first existing status dangerous to the public, it would not afford justification on the part of appellant to suppose that the changed situation would carry with it no new or increased obligation on its part to the public by way of remedy. The changed condition was such as, if not remedied, would cause injury to the public touching the metal hook on the pole, and the appellant could have reasonably anticipated such result. The injury to appellee therefore was one the appellant might reasonably have forecast as likely to happen. The street was constantly used by the public for business, pleasure, and resort. The charged pulley wire was in such close proximity to the level of the sidewalk as to be accessible to the public and to menace the safety of one who inadvertently or casually placed his hand on the metal hook. It is not an exceptional or unusual thing to do, for persons of mature years and judgment, when standing near a tree or pole, to lean against it or inadvertently touch or casually place the hand on a fastening or hook attached to it. The metal hook was convenient to the reach of the average man, and there was nothing in its appearance to excite alarm or suspicion.

[2] The appellant was accorded by the town authorities the privilege of stringing and keeping its wires and connections on the public street, upon the implied condition that it should use due care and precaution to avoid injury to every one who might lawfully be in proximity to its wires or connections and likely to come, accidentally or otherwise, in touch or contact with them. Accordingly the cases of insulated wires out of reach until some one climbs up to them, or of insulated wires above the ground and not near a place of resort by the public (Electric Co. v. Lefevre, 93 Tex. 604, 57 S. W. 640, 49 L. R. A. 771, 77 Am. St. Rep. 898) are not comparable to the instant case. In the case above cited the test of liability was stated as follows:

"Would an ordinarily prudent man, looking at the surroundings as they then appeared, have reasonably expected that any person would be upon the awning and might be injured by coming in contact with the exposed wires? If such a consequence might have been reasonably foreseen, then the plaintiff in error would be liable for the injury, * * * unless there be some other defense. * * * In the facts of this case, there is" no evidence "that the awning had been used by any person as a place of resort * * * for pleasure or * * * business."

And as appellee was not a trespasser or mere licensee upon the public sidewalk, the situation is distinguishable from the cases of City of Greenville v. Pitts, 102 Tex. 1, 107 S. W. 50, 14 L. R. A. (N. S.) 979, 132 Am. St. Rep. 843, and Burnett v. Light &. Power Co., 102 Tex. 31, 112 S. W. 1040, 19 L. R. A. (N. S.) 504, and other cases. The test of liability, the power of a prudent person to foresee injury to a person or a class of persons, of course, depends on the particular circumstances of the case, including the nature of the instrumentality, the place, and the status of the person injured. It is believed the testimony is such that the jury might have found that the appellant could have foreseen and ought to have anticipated the injury. The situation is similar to the cases of International Light & Power Co. v. Maxwell, 27 Tex. Civ. App. 294, 65 S. W. 78, and Railway Co. v. Fain (Ky.) 71 S. W. 628.

[3] It is believed that the appellee could not be held guilty of contributory negligence, as a matter of pure law. 1 Thompson on Negligence, § 808. The offending appliance which is the basis of liability was placed adjacent to the public sidewalk the public were accustomed to use, and was so situated as to be accessible to the public. It was not inherently dangerous to the touch. The appellee had the legal right to be at the place he was standing at the time. And the circumstances do not characterize his act as rash as a reckless encounter with known danger. He merely casually placed his hand on the offending appliance, without any knowledge of the peril arising from the special circumstances. The fact that there was no need for him to touch the hook would not, of itself, be sufficient to charge him with negligence, as a matter of pure law. It would not be an act so uncommon as, in the ordinary course of events, to be unlikely of occurrence. The question was one for the jury to decide.

[4, 5] The ground of objection to issue No. 1 is that:

"There is not a scintilla of evidence that the appellant knew of the dangerous condition that existed."

The phraseology of the issue rather goes to limit the inquiry to the jury to that of whether or not the dangerous condition of

the wires and the necessity of caution against danger of such condition might have been found out and known by the exercise of ordinary care. In other words, whether, in point of fact, the company had means of timely knowledge which it did not úse. But assuming that the issue should be construed, as appellant urges, as putting the inquiry to the jury of actual notice, the evidence, we think, sufficiently raises the issue. It is the general rule that 'the jury would be warranted in inferring actual notice from slight circumstances. It was proved that appellant's guy-wire, attached to the top of the pole, had been hanging down loose at one end and in touch with the service wires long enough "to wear off" the insulation of the service wires. And the jury were authorized to infer that it had been down and wearing against the wires "about two weeks," "a month or two," or "from the 12th to 15th of January, 1926," before the injury in suit on February 25, 1926. And the inference was allowable to the jury of actual notice to appellant's manager of the condition existing of the guy-wire being loose. He testified that he knew the telephone company were making replacements on its line, and ."had renewed the line on Williams street," and had "removed" the old pole, and had ceased working in the town "about two weeks, or maybe a month, at the time of the accident." The statement of the manager that he never knew the wire was loose before the day of the injury may or may not be conclusive of the fact, as the jury, in its province, had a right to determine.

[6, 7] The grounds of objection to the second issue are that actionable negligence may not be predicated on such finding, and this ground of negligence was not pleaded by appellee. While the allegations of the petition are in a manner general in their nature, yet that ground of negligence may reasonably be regarded as within the allegations made. And it is believed that issues 1 and 2, taken together, fairly present the law applicable to the circumstances of the case entitling appellee to recover damages.

[8] The grounds of objection to issue No. 3 is that it "assumed that the wires were uninsulated," when "the evidence showed that the wires were insulated." It can be assumed that the form of the issue was erroneous, but nevertheless such error does not afford ground for reversal, because, entirely eliminating such issue, the judgment can be· supported upon the other two special findings of the jury entirely severable from issue No. 3. It follows that the several as-

signments of error relating to these special issues must be overruled.

The remarks of the attorney as complained of were not objectionable constituting harmful error.

It is believed that the jury were warranted in finding the amount of damages, and that this court cannot say it was too much.

The case of Railway Co. v. Gray, 105 Tex. 42, 143 S. W. 606, rather than the case of Moore v. Ivey (Tex. Com. App.) 277 S. W. 106, is controlling of the assignments relating to a quotient verdict and impropriety of a juror.

[9, 10] The appellant predicates error upon peremptorily instructing a verdict in favor of the telephone company on the cross-action. The appellant by cross-action sought reimbursement for the damages it might have to pay appellee on account of the alleged negligence, claiming that its act was merely passive negligence, and the act of the telephone company was active negligence proximately causing the alleged injury. The telephone company, as claimed, cut loose the end of the guy-wire attached to its pole, without notifying appellant that it had been done. No contractual relationship existed. The telephone company merely gratuitously permitted the use at will of its pole. The duty thereby owed was merely to give timely notice of the severance of the wire. The mere fact of severing the wire from the pole would not, of itself, amount to prima facie case of negligence, and, as rather definitely appears after the telephone company cut loose the wire more than two weeks at least intervened before the injury happened to appellee, and during that time appellant took no active measures to prevent injury. Each was a free agent in what was done, neither being at all under the control of the other. Therefore the act of the telephone company being not so untimely as to constitute the immediate and responsible cause of the injury, the appellant should have removed the situation, knowing it to exist. It is just that appellant should be held responsible for all consequences of its default, because such default was the immediate and responsible cause of the injury, the happening of which might have been foreseen. The negligence of the telephone company was antecedent and remote. Railway Co. v. Nass, 94 Tex. 255, 59 S. W. 870; Light Co. v. Case (Tex. Civ. App.) 138 S. W. 621; and other cases. As conceded, there can be no contribution between the parties in case active negligence of both of them was the immediate and responsible or proximate cause of the injury.

The judgment is affirmed.