**STEED et ux. v. GULF, C. & S. F. RY. CO.**
**(No. 216–3339.)**

(Commission of Appeals of Texas, Section B. June 1, 1921.)

1. **Negligence ⬤⟲59—One liable only for injury reasonably anticipated.**

A person is liable for such injuries only as might reasonably have been anticipated as the natural result of his acts.

2. **Carriers ⬤⟲305(1)—Conductor's temporary blocking of aisle not proximate cause of woman passenger's falling while waiting for him to let her pass.**

The act of a conductor of a passenger train in temporarily obstructing the aisle as he stood therein, bending over to speak to some one, as a woman passenger approached walking to the rear, *held* not the proximate cause of her falling before she reached him as she halted to wait for him to let her pass.

3. **Carriers ⬤⟲283(2)—Conductor not negligent in temporarily blocking aisle.**

The conductor of a passenger train was not negligent in temporarily obstructing the aisle by standing therein, bending over to speak to some one, as a woman passenger approached, walking to the rear, and lost her balance before she reached him as she halted to wait for him to let her pass.

4. **Evidence ⬤⟲571(9)—Conductor's opinion on hypothetical case held incompetent.**

In action for injuries to woman passenger by falling in aisle while waiting for conductor to let her pass, testimony of the conductor that a woman walking to the rear of a car in motion might become overbalanced while attempting to stop to wait until one obstructing the aisle should let her pass was without probative value, being a mere opinion on a hypothetical case, and, in any event, had reference to a permanent blocking of the aisle, and not to a temporary blocking of the aisle, which was the character of the blocking disclosed by the evidence in the case at bar.

Error to Court of Civil Appeals of Sixth Supreme Judicial District.

Action by S. A. Steed and wife against the Gulf, Colorado & Santa Fé Railway Company. Judgment for plaintiffs was reversed and rendered by the Court of Civil Appeals (209 S. W. 772), and plaintiffs bring error. Judgment of the Court of Civil Appeals affirmed.

B. Q. Evans, of Greenville, and W. A. Shields, of Eastland, for plaintiffs in error.
Dinsmore, McMahan & Dinsmore, of Greenville, for defendant in error.

POWELL, J. S. A. Steed and his wife, Mrs. Lena Steed, sued the Gulf, Colorado & Santa Fé Railway Company, in the district court of Hunt county, Tex., for $15,000, which they allege as the damages accruing to them by reason of personal injuries sustained by Mrs. Steed while a passenger on one of the company's trains on the afternoon of April 25, 1916, between Garland and Celeste, Tex. Upon the theory, as alleged, that the conductor, in obstructing the aisle as he did, was guilty of negligence which proximately caused Mrs. Steed to fall as she did, the plaintiffs recovered judgment against the defendant for $4,000. The judgment was based upon a general verdict of the jury. From said judgment, the railway company perfected its appeal to the Court of Civil Appeals, where the judgment of the district court was reversed and rendered in favor of defendant in error. See 209 S. W. 772.

While Mrs. Steed's testimony on practically all material points is at variance with all the other evidence, including the testimony given by disinterested witnesses, the Court of Civil Appeals, in deference to the verdict of the jury, found the following facts:

"On the afternoon of April 25, 1916, appellee Mrs. Steed, then a passenger on one of appellant's trains, while walking from the front end to the rear end of the car she was in, fell to the floor thereof, and thereby was injured. Her account of the accident was, substantially, as follows: The conductor was at about the middle of the car, standing in the aisle, bent over, talking to some one, as she approached him. When she got near to him he straightened up, looked at her, and then again bent over toward the person he was talking to, thereby obstructing the aisle, she said, so that she could not pass on. She endeavored to wait in the aisle until the conductor 'got ready to let her pass,' but, instead, because the train was moving rapidly in a direction opposite to the one in which she was moving, lost her balance and fell to the floor. At the time she fell she was so close to the conductor, she said, that she 'could have touched him.' If he had not stooped over as he did, she further said, she could have gone 'around him and scrouged by him.'"

Based upon the findings of fact just set out, the Court of Civil Appeals held:

"Keeping in mind the rule that required appellant's conductor to use the care a very cautious, prudent, and competent person would have used for Mrs. Steed's safety when he saw her walking toward him in the aisle of the car (Ry. Co. v. Halloren, 53 Tex. 46, 37 Am. Rep. 744; St. John v. Ry. Co., 80 S. W. 235), we nevertheless are of the opinion the trial court erred when he refused appellant's request

that he instruct the jury to return a verdict in its favor; for we do not think the facts proven warranted a finding that said conductor acted as such a person would not have acted. We think a very cautious, prudent, and competent person reasonably would not have expected or foreseen that injury to Mrs. Steed would result from his obstructing the aisle as the conductor did, and therefore we think that the injury she suffered should have been regarded as due to an accident for which appellant was not responsible. Ry. Co. v. Brown, 75 S. W. 807."

There was only one allegation of negligence in this case, and that was the act of the conductor in blocking the aisle. No allegation of negligence was based either on the rough handling of the train, if it gave her a shove, or the presence of foreign articles in the aisle, if she was caused to fall. As a matter of fact, the accident occurred in an ordinary chair car, apparently equipped in the ordinary manner, and constructed in the usual way. There is no proof that the train was handled roughly, or that any foreign obstacle in the aisle caused her to fall. Again, there is neither allegation nor proof that the conductor, in leaning forward, struck the plaintiff, or touched her at all and caused her to fall. As a matter of fact, she never touched the conductor. She says, herself, she could have touched him. But she did not do so. In her pleadings, she avers that she was within about two seats of the conductor when the accident occurred. She never did testify just how far, in distance, she was from him. She is very indefinite in that regard. However, many witnesses do testify rather accurately on that point, and the reasonable conclusion from all the testimony is that she was from three to six feet distant from the conductor when she fell.

[1] It is the well-settled law of this state that a person is only liable for such injuries as might reasonably have been anticipated as the natural result of his acts. The rule has been clearly stated by our Supreme Court in several leading cases, as follows:

In case of Seale v. Railway Co., 65 Tex. 274, 57 Am. Rep. 602, that court says:

"When a defendant has violated a duty imposed upon him by the common law, he should be held liable to every person injured, whose injury is the natural and probable consequence of the misconduct; and that the liability extends to such injuries as might reasonably have been anticipated, under ordinary circumstances, as the natural and probable result of the wrongful act."

We quote further from the same case, as follows:

"That one exercising due care, and incurring no risks, in extinguishing a fire, should have the flames communicated to her clothes, and thereby lose her life, is something so improbable that the anticipation of it should not be charged to any one under such circumstances. Such a thing might happen, but it would be only from some casualty which could not possibly be foreseen; and, in such cases, as we have seen, the original negligence cannot be regarded as the proximate cause of the injury."

Justice Gaines speaks as follows in case of Railway Co. v. Bigham, 90 Tex. 223, 38 S. W. 162:

"Ought the agents of the company to have foreseen that, as a result of the imperfect fastening of the gate, the injury, or any injuries similar in character, would probably result? In our opinion, nothing short of prophetic ken could have anticipated the happening of the combination of events which resulted in the injury to the person of the plaintiff. The act of the defendant in permitting the fastening to its gate to become insecure was in itself lawful; and since it was clearly out of the range of reasonable probability that an injury to the person of any one should result, it should be held as a matter of law that the negligence of the company gave no right of action for such injuries."

Coming on down to later decisions, we also refer to a very able opinion by our present Chief Justice Phillips, in the case of Railway Co. v. Bennett, 110 Tex. 262, 219 S. W. 198, as follows:

"Under the authority of Seale v. Railway Co., 65 Tex. 274, 57 Am. Rep. 602, and Railway Co. v. Bigham, 90 Tex. 223, 38 S. W. 162, the negligence of the defendant's employés in the origin of the fire cannot be justly regarded as the proximate cause of the injury to Bennett. The test of this question is, ought the defendant and its agents to have reasonably foreseen that as the consequence of the negligence which caused the explosion in the tank car, the injury to Bennett, or like injury to some other employé in his situation, would probably result? In the language of Judge Gaines' opinion in the Bigham case, nothing short of prophetic ken could have anticipated the happening of the combination of events which resulted in Bennett's becoming overheated. No one standing at the stage of the entire happening which had to do with the gas explosion in the tank car could have regarded it as other than a bare possibility, at best, that at a later period of a fire thus produced in an open enclosure, an employé of the company, in attempting to extinguish it, would get so close to the fire or stay in such a situation so long as to be injured by the heat of the fire."

[2] Applying the above rules of law to the facts in this case, we are clearly of the opinion that the railway company is not liable to Mrs. Steed for the injuries she sustained. In the first place, it must be remembered that the aisles in the passenger coaches are for the common use of all. The train crew and the passengers are alike entitled to their use. They all have the same right to pass up and down these aisles, but each must use them with reasonable regard for the rights of others. No one has the right to permanently obstruct such passageways. The conductor not only had the right to be in this aisle,

but it was his duty to be there in the discharge of his obligations not only to the company, but to the passengers as well.

[3] Under the testimony of Mrs. Steed herself, he was looking after his passengers when leaning over to speak to them at the time of her accident. We believe, with the Court of Civil Appeals, that this conductor was doing nothing more than a very cautious, prudent, and competent employé would have done under the same circumstances, and that, laying aside the question of proximate cause, there was no negligence of any kind in his conduct. He says he would have stepped aside at the proper time and allowed Mrs. Steed to pass; that he would have done this when she reached him. There is no proof to the contrary, for Mrs. Steed fell before reaching him, and gave him no opportunity to step aside and permit her to pass.

[4] But, even if the conductor had actually blocked the aisle temporarily, he could not have anticipated the injuries here alleged. It is true, attorneys for plaintiffs, on cross-examination, gained certain admissions from him in answer to hypothetical questions, which amounted to declarations that, under certain circumstances, he might have anticipated the fall of Mrs. Steed. For instance, the following evidence:

"I was right slap in the aisle, but not quite all of the aisle was taken up by me. That distance across that aisle was 27 or 28 inches. As to whether or not, if I was standing there in that aisle like I said I was, she didn't have an inch to get by me on, I would have stepped out of the way and let her by. Yes, sir; that is proper, and it is my duty to do that. If a lady is coming down the aisle, it is my duty to step out and let the lady go by, and it is safer for our passengers for me to do that. No, sir; it is not my purpose to block the aisle when people are walking on it, and that would be dangerous, if I did. If a person should be coming right on to where I am standing, if a lady should be walking in the opposite direction from the way the train is going and meeting me, I would not block the aisle. I would be liable to unbalance the woman. Yes, sir; I would be liable to cause the woman to lose her balance and she might fall. I have been a conductor a long time and have done that."

Because of the testimony just quoted, which Chief Justice Willson said was admitted without objection, the latter, on motion for rehearing, expressed a desire to reverse his original opinion in this case. But a majority of that court adhered to its original opinion, stating that the evidence just quoted was without probative value on the issue of negligence vel non of the conductor, because a mere opinion of the witness on a hypothetical case, and for that reason incompetent as evidence. In support of this view, the case of Henry v. Phillips, 105 Tex. 459, 151 S. W. 533, is cited. In that case our Supreme Court, in a splendid opinion by Justice Dibrell, held:

"While the admission of this testimony was not objected to by counsel for defendants, that fact would be important only in the event its admission was afterwards complained of as violative of a right reserved to defendants. Such incompetent testimony can never form the basis of a finding of facts in an appellate court, notwithstanding its presence in the record without objection. When the appellate court comes to apply the law to testimony constituting the facts of the case, it can only base its conclusion upon such testimony as is under the law competent. That which is not competent testimony should be given no probative force. The admission of such testimony is no talisman to give effect to that which is irrelevant and incompetent to sustain or deny a material issue in a case."

We are of the view that the majority of the Court of Civil Appeals were correct in their holding with reference to this opinion testimony of the conductor. But, be that as it may, a reasonable construction of his evidence would not lead to the conclusion that even he anticipated the alleged injury to Mrs. Steed. What he evidently intended to say was that a "permanent" blocking of the aisle might lead to serious injuries to passengers. He also testified that he was careful of the welfare of his passengers; that he was not in the habit of blocking the aisle; that he always stepped aside at the proper time and let people pass; that he would have done so in the case at bar. He knew he frequently blocked the aisle temporarily, and he did not have such obstruction in mind in talking about serious injuries to passengers.

Operatives of railway companies can be charged only with the anticipation of such injuries as would reasonably result, in the light of, common experience, applied to surrounding circumstances. Tested by this rule, what do we find in this case? Happily, the case is within our common experience. Hundreds and thousands of us travel each day on passenger trains. We watch people go up and down the aisles in passenger coaches almost every day. We know how they act ordinarily. We know how these aisles are used. The train crew, in ordinary practice, as a passenger reaches them, usually step aside. They do not do so when passengers are from 3 to 50 feet distant from them. Such a stepping aside would involve needless delay in the discharge of their duties. Furthermore, passengers are occasionally delayed a minute or so in passing a conductor in the aisle. Such delay, in the absence of special notice to the conductor, is the only natural result to be anticipated from a temporary blocking of the aisle. We believe it is the only result that would follow in the case of an average person. The company in this case

had no notice that Mrs. Steed was afflicted in any way. It was only required to exercise the same care for her safety as it would for that of other ordinary passengers. The experience of those traveling on trains in passing conductors in the aisles, year after year, and in the common knowledge of all, is such as to render it wholly unreasonable to require a conductor to anticipate that a woman approaching him, seeing him, and knowing the aisle was temporarily, at least partly, obstructed, would be caused to fall and sustain serious injuries. The record is silent as to the cause of Mrs. Steed's fall. She says she slipped, or became excited, or stumbled. At any rate, the fall was the result of an intervening cause, which could not have been reasonably anticipated to flow naturally from the temporary presence of the conductor in the aisle. In the natural order of things, a person of average health would have acted thus in this situation: She would have gone ahead until she actually reached the conductor and then given him a chance to step aside; if he had not done that promptly, she would have asked him to do so. If he then failed to step aside in a reasonable time, the company would have been liable for such damage as would reasonably have been anticipated. Even then, there would be some doubt whether the fall and serious injury of the passenger should be anticipated as the natural result of the delay. Mrs. Steed just collapsed and neither gave the conductor an opportunity to step aside, nor requested him to do so.

We dislike to override the verdicts of juries, but we think all reasonable minds will agree with us that the railroad company should not be held liable in this case. If it should be so held, passengers could stand up in the aisles of coaches every day when the conductor is performing his usual duties, and temporarily obstructing the aisles, and faint away, and sue for and recover heavy damages. Such a rule would work the greatest possible injustice to railway companies. The floodgates would be opened to much litigation if any such rule should be established by our courts.

We have found no case exactly in point on the facts. We doubt if such a case as this has ever before found its way into the appellate courts. The case most nearly in point, that we have discovered, is that of De La Pena v. Railway Co., 32 Tex. Civ. App. 241, 74 S. W. 58. In that case, the railway company had blocked a crossing with cars, and the plaintiff desiring to cross the track, took a path running along the right of way for the purpose of going around the cars, stepped into a hole, or open drain, and was injured. In passing on the question as to the proximate cause of the injury in that case, the court said:

"The obstruction of the crossing was not that which, in a natural and continuous sequence, unbroken by any new independent cause, produced the accident which resulted in plaintiff's injury, and hence was its proximate cause."

We think the trial court should have instructed the jury, as requested by the railway company, to return a verdict for the defendant, and that the Court of Civil Appeals correctly reversed the judgment for plaintiffs and rendered one for the defendant in error.

Therefore we recommend that the judgment of the Court of Civil Appeals be affirmed.

PHILLIPS, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.