### 13062

### SANDERS v. CHARLESTON CONSOLIDATED RAILWAY & LIGHTING COMPANY

(156 S. E., 874)

April, 1930.

*Messrs. Logan & Grace,* for appellant,

*Mr. G. L. B. Rivers,* for respondent,

February 5, 1931.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

This action by the plaintiff, Jabez J. Sanders, Jr., against the defendant Charleston Consolidated Railway & Lighting Company, was commenced in the Court of Common Pleas for Charleston County, July 30, 1927, for damages, in the

sum of $100.00, for personal injuries alleged to have been sustained by the plaintiff, on or about the 20th day of November, 1926, on account of the negligence, carelessness, recklessness, and wantonness of the defendant, its agents and servants, in the particulars to which we shall hereinafter call attention. Answer to the complaint was filed by the South Carolina Power Company, as the successor to the Charleston Consolidated Railway & Lighting Company. This is the second appeal in the case. The result of the first appeal is reported in 154 S. C., 220 and 158 S. E., 438. All that was decided in the first appeal was that the judgment below would have to be reversed because the verdict of the jury should not have been received and recorded, and for that reason the case was remanded for a new trial. The second trial of the case was had at the April, 1930, term of said Court of Common Pleas of Charleston county, before his Honor, Judge M. M. Mann, and a jury. At the close of the testimony introduced on behalf of the plaintiff, on motion of counsel for the defendant, his Honor, Judge Mann, granted a nonsuit, and from the judgment entered on the order of nonsuit the plaintiff has appealed to this Court, alleging error in the following particulars:

"Exception I. The presiding Judge erred in granting a nonsuit upon the ground that there was ample testimony to carry the case to the jury.

"Exception II. Because the plaintiff having proved a violation of the ordinances of the City of Charleston by the defendant, requiring its wires to be insulated, and this being negligence *per se*, his Honor should have left it to the jury to say whether this negligence was the proximate cause of the injury and on this ground erred in granting the motion for a nonsuit.

"Exception III. His Honor erred in granting a nonsuit on the following grounds: 'But with the exhibit before me, I can only conclude that the defect in the wire is only a rare instance, it does not seem to be habitual. I cannot see how

that uninsulated spot, however it may have come there, unless it is larger than the camera shows it, could be held to be a negligent act in law, knowing that insulation may from time to time become defective in spots'; the error being:

"(a) That it was for the jury to determine, with all the exhibits before it and the other testimony, whether or not the defendant was guilty of negligence.

"(b) That his Honor could not take judicial cognizance of the fact (if it be a fact) 'that insulation may from time to time become defective in spots.'

"(c) That his Honor could not substitute his knowledge that insulation or wiring becomes defective and therefore there was no actionable negligence on the part of the defendant in allowing its wires to become so, when the city ordinances required defendant's wires to be insulated.

"Exception IV. That his Honor erred in granting the nonsuit on the ground that he was estopped from considering the testimony in the present case by the decisions in the *Foster* and *Williams cases* for the reason that neither of said cases are applicable to the present case."

The following quotation from plaintiff's complaint is necessary to get a clear understanding of the facts relied upon by the plaintiff to sustain his alleged cause of action:

"Second: That on or about the 20th day of November, 1926, plaintiff and his nephew, Carroll Huggins, a lad of about sixteen years of age, were in the yard in the rear of premises, corner Harris and Meeting Streets, in the City of Charleston, where the said plaintiff lived; that the said Carroll Huggins, in play and sport tied a long wire to a piece of iron and telling his grandmother that he was going to throw it into the marsh, threw the iron with the wire attached in the direction of the marsh; that the piece of iron fell and in doing so the wire attached to said iron came across an electric wire owned by said defendant corporation and strung along said Harris Street and carrying a high and deadly current of electricity, the insulation on said wire having been allowed by said defendant to become worn and defective;

that when the said lad, Carroll Huggins, saw that the wire attached to the piece of iron which he had thrown had caught over said electric wire, he ran out in the street and in a few minutes plaintiff heard him scream and rushed out to see what the trouble was; that as he did so and got in the street he saw his nephew, Carroll Huggins, lying on the ground dying, the said nephew having come in contact with the wire which had been thrown over the electric wire of defendant corporation, which said electric wire was carrying a high and dangerous current of electricity and on which the insulation had been allowed by said defendant to become worn and defective; that in the alarm, confusion, excitement and emergency of the situation, in going to the aid of said nephew, plaintiff became entangled in the wire attached to the missile which the said Carroll Huggins had thrown, and said wire, having become highly charged with electricity by reason of the insulation on said wire belonging to said defendant having been allowed to wear off, and become defective, he received a frightful and terrible shock from said highly charged wire, he was rendered unconscious, his right hand was burned at the wrist and side and crippled, he was badly burned on the side and back, burned in the mouth and nose and his left hand so horribly and frightfully burned that it was obliged to be amputated above the wrist. He was taken to a hospital where he remained for weeks and weeks, suffering the most excruciating and agonizing pain, was afterwards taken to his home, still suffering, and is permanently disfigured, maimed and crippled."

Following these allegations, the plaintiff, in naming specific acts of negligence, further set forth the following additional allegations:

"Third: That the injuries to plaintiff, as aforesaid, were caused by the negligence, carelessness, recklessness and wantonness of said defendant corporation, its agents and servants, in the following particulars, to wit:

"(a) In causing and allowing the insulation to be worn off and become defective on its wires on Harris Street, which said wires carried a high and dangerous electric current.

"(b) In failing and omitting to keep said wires, carrying said high and dangerous current of electricity over a public street in the City of Charleston, properly insulated.

"(c) In failing and omitting to have made any proper inspection of said wires, carrying said deadly current of electricity, so as to have ascertained their defective condition.

"(d) In failing and omitting to have said wire insulated, as required by the city ordinances of the City of Charleston."

The specifications under subdivision "d" was allowed by way of amendment of the complaint at the second trial of the case. The fourth paragraph of plaintiff's complaint, as to the amount of damages suffered by the plaintiff, is as follows:

"Fourth: That by reason of the negligence, carelessness, recklessness and wantonness of said defendant corporation, its agents and servants, as above set forth, said plaintiff was caused to suffer the most frightful and excruciating pain and anguish; was burned, maimed and disfigured and crippled, had his left hand so badly injured that it had to be amputated and was permanently injured to his damage One Hundred Thousand ($100,000.00) Dollars."

The defendant's motion for a nonsuit was based upon the following grounds:

"First: That the plaintiff's testimony does not prove any actionable negligence under the specifications alleged in the complaint.

"Second: That the plaintiff's testimony discloses that as a matter of law the proximate cause of the plaintiff's injury was the intervening act of Carroll Huggins in throwing a wire over the defendant's wires and bringing about plaintiff's injuries.

"Third: That plaintiff's testimony discloses that plaintiff was guilty of contributory negligence and did not act as a

reasonably prudent man would have acted in the circumstances which is the standard required by law."

His Honor, the trial Judge, rested the order of nonsuit upon the first and second grounds stated, and overruled the third ground upon which the motion was based.

As to the first ground upon which nonsuit was based:

The rule in this State is, on motions for a nonsuit, all the testimony introduced and the reasonable inferences deducible therefrom are to be taken and considered most favorably to the plaintiff, and if there is any evidence which reasonably tends to support either of the plaintiff's alleged causes of action a nonsuit is proper, but the case should be submitted to the jury. This rule is so well recognized that we consider it unnecessary to cite authorities in support of the same.

In response to allegations as to the ordinances of the City of Charleston, the plaintiff introduced in evidence the following:

"Section 214 of the ordinance passed May 22nd, 1906, reads as follows:

" 'Section 214. All electric light or power wires hereinafter erected or strung must be covered with a durable waterproof insulation not less than two coatings. Permits to string wires will be granted only after approval of samples submitted the city electrician and no wires, other than those thus approved by samples may be strung.'

"Section 209 of the ordinance passed March 14, 1921, reads as follows:

" 'Section 209. All applications for permits to erect poles must be filed in the office of the city electrician, accompanied by a plan indicating the proposed location and character of the same, such plan to be approved by the city electrician and the Chairman of the Committee on Shade Trees of the Board of Park Commissioners, and when so approved, he

shall issue a permit for the same: All poles to be set in the sidewalk wherever practicable.'"

In addition to the duties required of the defendant by the ordinances of the City of Charleston, where the defendant was engaged in business and maintained its electric light wires, in connection with which the plaintiff was injured, under the law of this State it is the duty of every person, company, or corporation engaged in the business in which the defendant was and is engaged, to see that their wires which convey electric current are properly guarded for the protection of life and property. In this connection we call attention to the rule stated in the opinion of Mr. Justice Blease in the recent case of *Weeks v. Power Co.*, and authorities therein cited, 156 S. C., 158, 153 S. E., 119, and also the case of *Hart v. Union Mfg. & Power Co.*, 157 S. C., 174, 154 S. E., 118. There was testimony adduced at the trial to the effect that the electrical wires in question were not insulated as required by the city ordinance and not properly guarded and protected as the law of this State requires; also, there was testimony to the effect that if the wires had been properly insulated and guarded as required by the city ordinance and the law of this State, the alleged injury to the plaintiff would not have occurred. The force and effect of this testimony is not a matter for this Court, but was a matter for the jury. We further hold that it is not only the duty of a power company, such as the defendant is alleged to be, to repair its electric lines when it has knowledge of needed repair, but it is bound to use due diligence to acquire information and knowledge concerning the condition of its electric wires, and the failure to do so constitutes negligence. *Mitchell v. Charleston Light & Power Company*, 45 S. C., 146, 22 S. E., 767, 31 L. R. A., 577.

In our opinion it was error to sustain the first ground, above stated, upon which the motion for nonsuit was based.

As to the second ground upon which the order of nonsuit was based, that the proximate cause of the plaintiff's injury was the intervening act of Carroll Huggins in throwing a wire over the defendant's wires, we consider it sufficient to state that according to our view of the case, the testimony, when considered in connection with the law applicable to the case, made an issue for the jury on this point, and we think it was error in not submitting that issue to the jury. Since the case will have to be remanded for a new trial, we desire to avoid a discussion of the testimony, and express no opinion as to the merits of the case, and simply hold that there being testimony adduced at the trial on every material allegation of the complaint, including the issue now under consideration, from which more than one reasonable inference may be drawn, a nonsuit was not proper. The electric wires in question were stretched over or by a frequently traveled street, along which many people lived, and where children and grown people should have been expected from day to day. It is not at all uncommon to see children playing in the streets from time to time, including those well up in their "teens," and whether the act of Huggins, a boy sixteen years of age, in throwing a piece of iron, with a wire attached, toward the marsh and coming in contact with the electric wires, was an act reasonably to be anticipated by the defendant, was in our opinion an issue for the jury. According to the testimony, when the plaintiff saw that Huggins had come in contact with the wire and was in danger, he rushed to Huggins for the purpose of trying to rescue him, and as a result was injured. Whether the plaintiff was guilty of contributory negligence in the manner he approached Huggins, as contended in defendant's answer, is not a question before us, for the reason that the trial Judge overruled that ground and there is no appeal from that ruling.

In support of the views herein expressed, in addition to the authorities we have already cited, we call attention to

the following cases: *Hayes v. Power Co.,* 95 S. C., 230, 78 S. E., 956; *Parsons v. Electric Co.,* 69 S. C., 305, 48 S. E., 284, 104 Am. St. Rep., 800; *Lundy v. Telephone Co.,* 90 S. C., 25, 72 S. E., 558; *Irvine v. Greenwood,* 89 S. C., 513, 72 S. E., 228, 36 L. R. A. (N. S.); 363; *Storm et al. v. Leavenworth Light Co.,* 102 Kan., 40, 169 P., 556, 20 R. C. L., 13; *Jacobs v. A. C. L. R. R.,* 147 S. C., 184, 145 S. E., 146; *Snyder v. Power Co.,* 98 Kan., 157, 157 P., 442.

As to the cases of *Foster v. City of Union,* 129 S. C., 257, 123 S. E., 839, and *Williams v. City of Sumter,* 149 N. C., 375, 147 S. E., 321, to which respondent calls attention, we do not think the same are controlling in the case at bar.

It is the judgment of this Court that the order of nonsuit and the judgment thereon be reversed, and the case remanded for a new trial.

MESSRS. JUSTICES BLEASE and STABLER concur.

MR. JUSTICE COTHRAN, dissents.