## TEXAS UTILITIES CO. v. WEST et al.
### No. 3893.

Court of Civil Appeals of Texas. Amarillo.
March 29, 1933.

Rehearing Denied April 26, 1933.

Dameron & Dameron, of Hereford, and Underwood, Johnson, Dooley & Simpson and Vance Huff, all of Amarillo, for appellant.

Paul A. Speer, of Amarillo, and Jno. A. Coffee and Carl Gilliland, both of Hereford, for appellees.

JACKSON, Justice.

The plaintiffs Mrs. O. F. West, surviving wife of O. F. West, deceased, acting for herself and as the legally appointed guardian of Howard Floyd and Maurine, the minor children of herself and her deceased husband, joined by H. T. West and wife, Mattie, the parents of the deceased, instituted this suit to recover from the defendant, Texas Utilities Company, a corporation, damages for the death of O. F. West which they alleged was occasioned by the negligence of the defendant.

The plaintiffs pleaded that O. F. West and his aforementioned wife and minor children occupied as a home certain property in Hereford, Tex., across which the defendant maintained high-tension power lines which extended between the dwelling and the windmill tower on said premises; that on September 20, 1927, O. F. West attempted to put up an uninsulated copper wire from the windmill tower to his dwelling as an aerial for his radio; that the copper wire came in contact with the defendant's high-tension line, and O. F. West was electrocuted; that the high-tension wire constituting defendant's lines were covered with some substance, which, to a person of ordinary prudence, but not skilled in the operation of electricity, gave them the appearance of wires which were in-

sulated to protect persons coming in contact therewith from danger, and the deceased relied on such appearance and was deceived and misled thereby; that said lines were not sufficiently insulated and would not protect a person who came in contact therewith from injury.

In the alternative, plaintiffs say that, if said lines were originally sufficiently insulated, then such insulation had become defective, insufficient, and inadequate by reason of breaks and abrasions therein caused by age and exposure to the weather; that all of such conditions were known to the defendant, or could have been known by ordinary diligence, but were unknown to the deceased, and he was given no notice or warning of the conditions of said lines or the danger of coming in contact therewith; that such acts were negligence and the proximate cause of the death of O. F. West.

The defendant answered by general demurrer, certain special exceptions, general denial, pleas of limitation, and alleged the contributory negligence of the deceased based on numerous different grounds.

The defendant specially excepted to the cause of action alleged in behalf of the respective plaintiffs, as their pleadings disclosed that their claims were barred by limitation.

The deceased was killed September 20, 1927. Mrs. O. F. West, on December 16th thereafter, was appointed guardian of the estates of Howard Floyd, age 6, and Maurine, age 4, at the time of their father's death. The original petition was filed January 22, 1931.

The court sustained the defendant's contention as to the individual claims of the surviving wife and parents of the deceased, but held that limitation did not defeat the rights of the minor plaintiffs.

In response to special issues submitted by the court, the jury found, in effect, that, at the time the deceased lost his life, the high-tension wires of the defendant were not sufficiently insulated to prevent the escape of a dangerous electric current; that the insulation had breaks and abrasions therein, caused by age and exposure to the weather; that the defendant knew, or could have known by the exercise of reasonable diligence, of the defective and dangerous condition of said lines; that it did not warn the deceased of such defects or the danger caused thereby; that defendant was negligent in maintaining its said lines without sufficient insulation and in permitting such insulation to become and remain defective, negligent in failing to warn the deceased of the condition of said lines and the resultant danger of coming in contact therewith, and that such negligence was the proximate cause of the death of O. F. West. The jury found that the deceased did not know and could not, by the exercise of or-

dinary care, have known of the defective conditions of the insulation of said lines and the consequent danger thereof and acquitted the deceased of all acts of contributory negligence charged against him by the defendant.

The court entered judgment that Mrs. O. F. West individually and H. T. and Mattie West take nothing and on the findings of the jury decreed that Howard Floyd West recover the sum of $3,500 and Maurine West recover the sum of $4,000, from which judgment in favor of the minor plaintiffs this appeal is prosecuted.

The appellant contends by proper assignment that, inasmuch as the record shows without dispute that Mrs. O. F. West was legally appointed and qualified as the guardian of the estates of the minor plaintiffs more than two years prior to the institution of this suit, its plea of limitation should have been sustained against the minor plaintiffs and judgment in their behalf denied.

At the time the cause of action accrued to the minor plaintiffs, and at the time of the trial, they were under the disability of minority, and were not subject to the statutes of limitation, article 5535, R. C. S., unless their rights were barred by the failure of their legally appointed guardian to institute suit in their behalf within two years from her qualification.

"In reference to this it is sufficient to say that in our own state it is held that the heir or ward under disability is not deprived of his action by any neglect on the part of the administrator or guardian to bring suit within due time. * * *

"However much the courts of other states may differ upon this point, they have almost universally agreed that the position of a trustee under deed is different from that of a guardian or administrator, the trustee holding the legal, while the cestui que trust holds the equitable, title; whereas the heir or ward holds the legal title, subject only to the right of the administrator or guardian to control the estate for the benefit of all parties interested in it or its administration." Collins v. McCarty, 68 Tex. 150, 3 S. W. 730, 731, 2 Am. St. Rep. 475.

In Shaw, Banking Commissioner, v. Dalston (Tex. Civ. App.) 18 S.W.(2d) 215, 219, writ refused, in speaking of the trust reposed in a guardian, the court says: "His powers and obligations are similar to those of a trustee, with the distinction that a guardian does not have title to the ward's property."

The rules of limitation controlling suits by trustees for their beneficiaries "have no application when the legal title is vested in the cestui que who labors under the disability of minority. In such case the statute of limitation does not run against him, although

it may have run against the trustee." 21 Tex. Jur. 389, § 118, and authorities cited.

■ The statutes give to the minor plaintiffs a cause of action against the defendant for the wrongful death of their father. R. C. S. article 4671, and article 5525 (as amended by Acts 1927, c. 239, § 1 [Vernon's Ann. Civ. St. art. 5525]). Such a cause of action is a property asset or an estate. 13 Tex. Jur. p. 623; St. Louis Southwestern Ry. Co. v. Smitha, 111 Tex. 285, 232 S. W. 494. See, also, 37 C. J. p. 1018.

The cause of action arising from the death of their father was a property right or an estate belonging to the minor plaintiffs, and the trial court correctly held that the suit of the minor plaintiffs was not barred by limitation.

The appellant presents as error the action of the trial court in refusing to direct a verdict in its behalf (1) because the testimony fails to show that it was guilty of actionable negligence; and (2) the testimony shows that the deceased was, as a matter of law, guilty of contributory negligence.

■ In determining whether the peremptory instruction should have been given, we must discard the adverse testimony, credit the evidence favorable to the plaintiffs, and indulge every legitimate conclusion that may be drawn from the evidence in their favor. Gross v. Shell Pipe Line Corporation (Tex. Civ. App.) 48 S.W.(2d) 377; Jones v. Jones, et al. (Tex. Civ. App.) 41 S.W.(2d) 496; and authorities cited in both opinions.

■ Measured by the rules thus announced, the record reveals that Hereford had between 2,500 and 3,000 inhabitants in 1927, many of whom had windmills located in the rear of their premises and more of whom had radios in their homes. The radios were operated with standard copper wire aerials, approximately 100 feet in length, and such wire was frequently extended from the radio in the house to the top of the windmill tower located in the back yard. They were generally strung at right angles to telephone lines and light wires in order to better avoid electrical interference and to secure better reception. The deceased was not a trespasser or a licensee. He occupied the premises as a home under a lease from the owner, across which the appellant, with the permission of the owner, had extended its high-tension lines and suspended them between the dwelling and the windmill tower about 20 feet above the ground. These lines carried a deadly current of 2,300 volts of electricity, and were inclosed in triple braid weatherproof, consisting of three braids of cotton fiber saturated with a bitumen material. This covering gave the lines the appearance of being insulated, and, when new and in good condition, constituted a fairly effective insulation and afforded reasonable protection to any person or conduc-

tor of electricity coming in contact with the lines. The covering deteriorates with age and exposure to the weather, and becomes defective and inadequate after having been in use a number of years. To determine whether such covering is insufficient or has become inadequate, electricians employ a volt meter or other device to determine whether the current in a line carrying 2,300 volts will be transmitted to and through such a conductor as the wire the deceased placed in contact with appellant's lines. These high-power lines had been erected across the premises occupied by the deceased about eighteen years, but the insulation thereon at the time of his death did not appear to have anything wrong with it, and the defects therein were not noticeable to the average person in the exercise of reasonable prudence. A test of 8 or 10 feet of one of appellant's lines with the same coverage and voltage, after it had been in use four years, disclosed no reaction to the volt meter. A test of the same kind of a line, in different places, after it had been in service approximately ten years, showed a reaction from zero to 2,300 volts.

The deceased had his copper wire wound around a small board, and, in order to erect his aerial, ascended the windmill tower, nailed a strip of wood thereto, which projected above the tower, fastened one end of his wire to such projection and either from the platform of the windmill tower or from the ground, threw the piece of board around which the most of the aerial wire was coiled, over the high-tension wires which were about 12 or 15 feet from the tower. The aerial wire fell across the power lines, deceased went toward the house to where the board had fallen, picked up the wire, and was killed by a current of electricity.

The deceased had only such knowledge of electricity as that possessed by the ordinary person, and appellant had given him no warning of the inadequacy of the insulation or the deterioration thereof rendering it dangerous to come in contact therewith, all of which it knew or by the exercise of ordinary care would have known. Appellant knew, through its officers and agents, of the many windmill towers in Hereford and the customary manner of erecting the radio aerials and the frequency with which people attached their aerial wires to such towers. The telephone wires ran along the street in front of the residence of the deceased, and, in order to secure an aerial of standard and satisfactory length, he was intending to extend his wire from the windmill tower beyond the power lines to the radio in his house.

■ It was the duty of appellant to use due care in constructing and maintaining its lines, remedying defects therein, anticipating and preventing injuries, and the degree of care required was proportionate to the danger to

be avoided, taking into consideration the nature of the agency and the place and likelihood of injury.

"In the exercise of proper care the company is required to inspect its lines and appliances, to afford protection against ordinary atmospheric conditions, and, when necessary to guard against accidental injuries, to give warning of concealed or latent perils, to install safety devices, such as circuit breakers, ground detectors, and lightning arresters, and to insulate its wires." 16 Tex. Jur. § 9, p. 237 et seq.

"In general, a duty to have wires insulated exists at places where the public, or workmen or other persons whose duties called them in proximity, would be exposed to injury. This duty may also obtain when insulation is necessary to prevent contact with another wire, or where a radio aerial or telephone wire is strung above a light or power line, under such circumstances that, in case of breakage of the upper wire, it will fall and come in contact with the charged line." 16 Tex. Jur. p. 242, § 11.

It is not contributory negligence, as a matter of law, for a pedestrian on a sidewalk to touch a hook on an electric pole, East Texas Public Service Co. v. Johnson et al. (Tex. Civ. App.) 300 S. W. 975; Id. (Tex. Com. App.) 6 S.W.(2d) 344; for a police officer, in attempting to relight a street lamp, to shake the cable by which it was suspended, San Angelo Water, Light & Power Co. v. Anderson (Tex. Civ. App.) 244 S. W. 571; For a person, after receiving a slight shock from his telephone, to attempt to cut the wire, Temple Electric Light Co. v. Halliburton (Tex. Civ. App.) 136 S. W. 584.

For additional authorities on the actionable negligence of the defendant and the contributory negligence of the deceased, we cite the following: Olivas et ux. v. El Paso Electric Co. (Tex. Civ. App.) 54 S.W.(2d) 154; West Texas Utilities Co. et al. v. Renner (Tex. Civ. App.) 32 S.W.(2d) 264; Id. (Tex. Com. App.) 53 S.W.(2d) 451; Texas Power & Light Co. v. Culwell (Tex. Com. App.) 34 S. W.(2d) 820; Oil Belt Power Co. v. Touchstone (Tex. Civ. App.) 266 S. W. 432; Gulf States Telephone Co. v. Evetts (Tex. Civ. App.) 188 S. W. 289; Snyder Ice, Light & Power Co. v. Bowron (Tex. Civ. App.) 156 S. W. 550; Standard Light & Power Co. v. Muncey, 33 Tex. Civ. App. 416, 76 S. W. 931; Kessler v. West Missouri Power Co., 221 Mo. App. 644, 283 S. W. 705; Geismann v. Missouri-Edison Electric Co., 173 Mo. 654, 73 S. W. 654; McLaughlin v. Louisville Electric Light Co., 100 Ky. 173, 37 S. W. 851, 34 L. R. A. 812; Braun, Adm'r v. Buffalo General Electric Co., 200 N. Y. 484, 94 N. E. 206, 34 L. R. A. (N. S.) 1089, 140 Am. St. Rep. 645, 21 Ann. Cas. 370; Sanders v. Charleston Consolidated Railway & Lighting Co., 159 S. C. 266, 156 S.

E. 874; 9 R. C. L. pp. 1210–1213; 20 C. J. pp. 355, 356.

■ In our opinion the trial court was not authorized to hold as a matter of law that the appellant was not guilty of actionable negligence or that the deceased was guilty of contributory negligence, and direct a verdict for appellant.

The appellant, by proper assignment, contends that the judgment rendered against it was unwarranted and unsupported by the verdict, because of the conflicting findings of the jury on certain issues.

Special issue No. 14 (a), submitted by the court in his main charge, is:

"Special Issue No. 14 (a). Could the defendant have reasonably anticipated prior to the time of O. F. West deceased, was killed, that the said O. F. West, might reasonably be expected to install a radio in his house on the premises where he was killed, and that he might reasonably be expected to install said radio and to suspend an outside aerial wire consisting of bare copper wire, from a connection with said radio, in his said residence, above and across defendant's high-tension wire, to the windmill tower located on said premises, and in such proximity to the high tension wire, that in the suspension of said aerial wire that same might come in contact with defendant's said high tension wire, or one of them, where the said breaks and abrasions, if any, in the insulation around defendant's high tension wire, or where the amount of insulation around the high tension wire was insufficient, if you find it was insufficient?" To which the jury answered: "Yes."

Special issues Nos. 14, 15, and 16 submitted by the Court at the request of appellant read as follows:

"Defendant's Requested Special Issue No. 14: Should a person of ordinary prudence have reasonably foreseen that someone might probably get a bare wire in contact with the defendant's electric wire or wires in question in the manner which O. F. West did, or some similar manner, with the rest of the bare wires hanging down on the ground, and then while standing on the ground attempt to handle the said wire in the way and manner attempted by said West or some similar way or manner?"

"Defendant's Requested Special Issue No. 15: Would a person of ordinary prudence have reasonably foreseen that somebody might probably get a bare wire in contact with the defendant's wire or wires in question in the manner in which the deceased, O. F. West, did, or some similar manner, with part of the bare wire hanging down to the ground, and that as a result the said wire would become charged with electricity sufficient to hurt or kill the person attempting to handle same?"

"Defendant's Requested Special Issue No. 16: Would a person of ordinary prudence have reasonably foreseen that someone might probably get a bare wire in contact with the defendant's wire or wires in question in the manner in which the deceased, O. ·F. West, did, or some similar manner, with part of the bare wire hanging down to the ground,· and then attempt to handle the said wire in some way or manner that would cause said hanging wire to become charged with electricity that would hurt or kill the person in contact therewith?"

Each of said last issues were answered in the negative.

█ In Fort Worth & D. C. Ry. Co. v. Armitage, 39 S.W.(2d) 108, 112, it is said by Chief Justice Hall of this court that:

"To be the proximate cause, the injury must be the natural and probable consequence of the act complained of and of that character which should reasonably have been foreseen as such a consequence in the light of attending circumstances. Eames v. T. & N. O. Ry. Co., 63 Tex. 660; T. & P. Ry. Co. v. Bigham, 90 Tex. 223, 38 S. W. 162; Steed v. G., C. & S. F. Ry. Co. (Tex. Com. App.) 231 S. W. 714; Id. (Tex. Civ. App.) 209 S. W. 772; Galveston, H. & S. A. Ry. Co. v. Bell, 110 Tex. 104, 216 S. W. 390.

"These and other cases hold that foresceableness is a necessary element of proximate cause. Linn Motor Co. v. Wilson (Tex. Civ. App.) 14 S.W.(2d) 867; Blanch v. Villiva (Tex. Civ. App.) 22 S.W.(2d) 490."

See, also, Enterprise Company v. Alexander (Tex. Civ. App.) 6 S.W.(2d) 423.

█ The trial court recognized the law as above announced in the issues submitted in his main charge and· at the request of appellant, but the findings of the jury on the question of foreseeableness are in irreconcilable conflict. West Lumber Co. v. Keen (Tex. Com. App.) 237 S. W. 236; Southwest Bithulithic Co. v. Dickey (Tex. Civ. App.) 28 S.W. (2d) 264; San Antonio & A. P. Ry. Co. v. Milam County (Tex. Civ. App.) 191 S. W. 571. This assignment is sustained.

█ Because it assumes as a fact the existence of negligence and is on ·the weight of the evidence, the appellant challenges as erroneous special issue No. 15 (a), given in the court's main charge, which reads as follows: "Do you find from the evidence that Howard Floyd West and Maurine West have been damaged by reason of the negligence of the defendant?"

This contention is correct. Gordon v. McIntosh (Tex. Civ. App.) 54 S.W.(2d) 177; City of Amarillo v. Rust (Tex. Civ. App.) 45 S.W. (2d) 285; Monzingo v. Jones (Tex. Civ. App.) 34 S.W.(2d) 662.

█ The appellant presents seventy-three other assignments of error which we deem it unnecessary to discuss separately. On the question of burden of proof, we call attention to Psimenos v. Huntley (Tex. Civ. App.) 47 S.W.(2d) 622; on duplicity in some of the issues, Theis v. Curts (Tex. Civ. App.) 33 S. W.(2d) 754. Under this record the appellant was not an insurer, and the charge should have been so framed as to make it liable for negligence only. The alleged misconduct of the jury, if error, will probably not occur on another trial.

The judgment is reversed, and the cause remanded.

MARTIN, J., not sitting.