### TEXAS UTILITIES CO. v. WEST et al.

#### No. 4620.

Court of Civil Appeals of Texas. Amarillo.

June 1, 1936.

Rehearing Denied July 3, 1936.

Dameron & Dameron, of Hereford, and Underwood, Johnson, Dooley & Huff, of Amarillo, for appellant.

Jno. A. Coffee, of Hereford, and Haney, Craig, De Shazo, Van Nort & Hyde and Carden, Starling, Carden & Hemphill, all of Dallas, for appellees.

JACKSON, Justice.

This is an appeal from a judgment aggregating the sum of $17,000, obtained by appellee Mrs. O. F. West in the district court of Deaf Smith county in behalf of her two minor children, Howard Floyd and Maurine, against the appellant, Texas Utilities Company, for the death of their father, O. F. West, alleged to have been occasioned by the negligence of said company.

She alleged that the deceased, O. F. West, was her husband; that they, with their minor children, occupied as a home certain rented premises in Hereford, Tex., on which a windmill tower and a dwelling were located. That across the premises the appellant had erected and maintained, between the windmill tower and the dwelling, its primary power lines, through which it transmitted 2,300 volts of electricity. That on September 20, 1927, the deceased attempted to put an uninsulated copper wire from the top of the windmill tower to his dwelling as an aerial for their radio, and the aerial wire came in contact with the power lines of appellant, and her husband was electrocuted. That the wires constituting appellant's primary power lines were covered with some substance which, to a person of ordinary prudence but not skilled in the operation of electricity, gave them the appearance of having been insulated, and the deceased, relying upon such appearance, was deceived, since such lines were not sufficiently insulated to protect a person from injury who came in contact therewith. She pleaded in the alternative that if the lines were sufficiently insulated when erected, such insulation had become inadequate by reason of breaks and abrasions caused by usage,

age, and exposure to the weather; that such conditions were known to the appellant, or should have been by the exercise of ordinary prudence, but were not known to the deceased, and he had no notice or warning of the danger of coming in contact with the lines in their condition; that such alleged acts of appellant constituted negligence, and were the proximate cause of the death of O. F. West.

On a former appeal of this case, the judgment was reversed and the cause remanded. Texas Utilities Company v. West et al. (Tex.Civ.App.) 59 S.W.(2d) 459. The opinion, to which we refer, contains a statement of the cause of action alleged, and the defenses urged thereto, and of the facts as here supplemented, sufficient to dispose of this appeal.

The appellant, on the former appeal and here, again, earnestly insists that the court committed reversible error in refusing to direct a verdict in its behalf, first, because the testimony shows no actionable negligence against it, and, second, for the reason that the record does show, as a matter of law, that the deceased was guilty of contributory negligence.

■ On these questions there is no substantial difference between the evidence contained in the record on the former appeal and that presented in this record. The deceased, under his rental contract with the owner, was using and occupying the premises as a home, and incidental to such occupancy he had the right to extend an aerial wire from the windmill tower to his dwelling. In so doing he was no more trespassing on appellant's rights than appellant would have been trespassing on the rights of the deceased when it went on the premises to inspect or repair its electric lines. Texas Utilities Company v. West et al., supra; Texas-Louisiana Power Company v. Webster et al. (Tex.Sup.) 91 S.W.(2d) 302.

■ The appellant presents as error the action of the trial court in refusing to grant its motion for a new trial and set aside the judgment because of the misconduct of the jurors while deliberating on their verdict.

It was essential, in order for the appellees to recover, for the testimony to show that the appellant was guilty of the acts of negligence alleged. The acts of negligence relied on were that appellant's power lines were not sufficiently insulated when erected, or that the insulation had become inadequate by reason of breaks and abrasions caused by usage, age, and exposure to the weather.

The testimony is conclusive that appellant's primary power lines carried 2,300 volts of electricity, were inclosed in triple braid weatherproof covering, composed of three braids of cotton fiber, saturated with bitumen, and when so inclosed the line is black; that while such covering is not used primarily for the purpose of insulation, it gives the line the appearance of being insulated, and affords reasonable protection to a person coming in contact therewith, either directly or through some conductor of electricity. The testimony indicates that the covering constitutes reasonably adequate insulation for twelve or fifteen years. That during this time the bitumen evaporates, and after such evaporation the covering is a dark brown color and more susceptible to breaks and abrasions, and under certain circumstances and conditions furnishes less adequate insulation. There is testimony to the effect that appellant's lines on the day the deceased was electrocuted were a dark brown color, but that no breaks or abrasions were visible from the ground. The appellee offered testimony to the effect that the lines involved had been erected and in use approximately nineteen years. From the testimony offered by appellant the jury could have found that such lines had been constructed and used for a period of less than seven years. The length of time the power lines had been erected, therefore, was a material circumstance to be considered in determining whether the lapse of time was calculated to so affect the insulation on the primary power lines as to charge appellant with negligence in the maintenance and operation thereof.

After the jury had received the charge of the court and retired to consider its verdict, one of the jurors stated to the other members thereof that he had on his farm a Delco lighting system, with regularly braid-covered electric wires, some of which had been exposed to the weather for a period of nine years, and that the color of the covering was still black. These statements tended to discredit the contention of appellant that the line had been in operation for only seven or eight years, since the inference is, if the juror's line had retained the black color for nine years, appellant's line would have remained black

if it had not been in use more than seven or eight years. The statements further tended to corroborate the contention of appellees that the lines had been constructed and in use for a much greater length of time than appellant asserted.

The appellant had pleaded numerous acts which it alleged constituted contributory negligence. While the jury was considering what a man of ordinary prudence would have done under the circumstances and conditions surrounding the deceased when he was attempting to erect the aerial wire, for the purpose of determining whether or not he was guilty of contributory negligence, one of the jurors remarked that he would be afraid to tamper with electric wires. Another stated that he had a feeling of security when he was around covered electric wires. Thereupon the foreman stated that at one time, while moving a house along the streets of Hereford, he was on top thereof, and in order to allow the house to pass he took hold of the electric light wires with his hands and raised them over the chimney. Another juror immediately stated that he himself had strung a radio wire over electric light wires. From these statements it was inferable that the deceased had acted as an ordinarily prudent man would have, under the same or similar circumstances.

One of the jurors testified, in effect, that at the time the jury retired to deliberate on their verdict his opinion was that if the deceased had used ordinary care and prudence, he would not have brought the aerial wire in contact with appellant's power lines.

Among other acts of contributory negligence, appellant charged that the deceased, just before he received the shock resulting in his death, had pulled and dragged the aerial wire over the appellant's power line wires, thereby causing electrical contact which charged the aerial wire with electricity, and resulted in the electrocution of the deceased.

The testimony shows, without dispute, that the aerial wire was composed of seven strands of small copper wires, twisted together, which made a rough surface, and when dragged over the power lines wires was calculated to cut the weather covering and permit contact with the power lines wires.

In response to special issues submitted, the jury found in effect that the deceased did pull or drag his aerial wire over appellant's primary electric power lines on the day of his fatal injury, but that such dragging of said aerial wire did not scratch or cut the surface of the covering on appellant's lines. While the jury was deliberating, the jurors discussed whether or not the aerial wire might cut the surface of the covering of appellant's wires, and one of them stated that he had whittled on the insulation of electric wires and found it very tough, from which statement it could be inferred that dragging the aerial wire, over the power line was not calculated to cut the covering thereof.

Some of the jurors were for returning a verdict for a smaller sum than the $17,-000, but while considering the amount of damages the appellees were entitled to recover, one of the members of the jury stated that it would take quite a bit of the amount of the damages allowed to pay the lawyers, and that the children would not get very much by the time all of the attorneys got their interest. The foreman advised the jury that the attorneys' fee was not a matter for them to consider, but these statements were made just before the amount of the verdict was fixed. There had been two former trials, in each of which a verdict had been rendered in behalf of appellees, but both of said verdicts aggregated a sum less than the $17,000 awarded in this case.

The testimony of the jurors, heard on the motion for a new trial, shows, without contradiction, that the above statements were made by the jurors while the jury was deliberating on the verdict to be returned, and, in our opinion, constituted such misconduct as to require a reversal of the judgment. St. Louis Southwestern Ry. Co. of Texas v. Mauney (Tex. Com.App.) 93 S.W.(2d) 377; Texas & Pacific Ry. Co. v. Gillette et al., 125 Tex. 563, 83 S.W.(2d) 307; Lincoln v. Stone (Tex.Com.App.) 59 S.W.(2d) 100; Elizondo v. Reagan et al. (Tex.Com.App.) 55 S. W.(2d) 540; Sims v. Sims (Tex.Civ.App.) 296 S.W. 612; Moore v. Ivey (Tex.Com. App.) 277 S.W. 106, and authorities cited.

The appellant assails as erroneous certain special issues submitted, asserting that the court assumed that the aerial wire could have come in contact with either or both of its primary lines and received the charge from either or both which was transmitted to and caused the death of O. F. West. In the issues complained of, the court asked in substance if the appellant, imme-

diately prior to the contact, had "failed to have in a reasonably good and proper condition for insulation service the covering on its electric wire or wires at the place or places" from which the current came which shocked the deceased.

The appellant had two primary lines, about four feet apart, one nearer the windmill tower, the other nearer the dwelling. The appellant claimed that the deceased was guilty of contributory negligence in pulling and dragging the aerial wire over the covering of the power line next to the dwelling; that the covering on said line was so injured or destroyed thereby that contact was made with the electric current in said line, and the electricity transmitted through the aerial wire to the deceased.

If the evidence does not show conclusively the contact was between the aerial wire and the appellant's line next to the dwelling, the testimony did present, as a fact issue, that the electric contact was made with said line. The jury found that the deceased pulled and dragged the aerial wire over said power line, and, according to the uncontroverted testimony, this was calculated to cut and injure the covering and cause electric contact between the aerial wire and said power line. The significance of this contention arises because if the aerial wire was charged by the line next to the windmill, or by both of the power lines, the question of cutting the covering on the line next to the dwelling by dragging the aerial wire over it became immaterial as an issue of contributory negligence.

The appellant also challenges as erroneous several issues submitted, claiming that the court assumed that appellant was under the absolute duty of insulating its wires in a reasonable and proper manner to avoid the injury of the deceased; also, that the issues as submitted did not confine the jurors to the negligence alleged, but permitted them to speculate on any act of appellant they might conceive to be negligence.

■ The appellant, according to the uncontroverted testimony, had constructed and was operating its lines according to the universal standard for such plants. We deem it sufficient to say that the appellant was not an insurer, and the degree of care required for the protection of the deceased was proportionate to the danger to be avoided, taking into consideration the nature of the electric agency and the place and likelihood of injury. Texas Utilities Co. v. West et al., supra. See, also, Citizens' Ry. Co. v. Gifford, 19 Tex.Civ.App. 631, 47 S.W. 1041 (writ refused); 20 C.J. p. 344, par. 37; 9 R.C.L. p. 1213.

■ It is the settled law that the court, in submitting issues of negligence, must confine such submission to the acts of negligence alleged. Gulf, C. & S. F. Ry. v. Baldwin (Tex.Civ.App.) 2 S.W.(2d) 520; Texas & N. O. Ry. v. Crow et al., 121 Tex. 346, 48 S.W.(2d) 1106; Connecticut General Life Ins. Co. v. Banderbee (Tex.Civ. App.) 82 S.W.(2d) 764.

The appellant presents numerous other assignments of error which we deem it unnecessary to discuss since they probably will not arise on another trial.

The judgment is reversed, and the cause remanded.